IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARNOLD B. WEISS, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:07-cv-1019 (RJL) |
| | ) |
| NIKE, INC., a/k/a NIKE USA, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MOTION TO COMPEL INSPECTION OF TANGIBLE OBJECT

Defendants, Nike, Inc., a/k/a Nike USA, Inc. ("Nike") and Eastbay, Inc. ("Eastbay"), by and through undersigned counsel, hereby file this Motion to Compel Inspection of Tangible Object pursuant to Federal Rule of Civil Procedure 34 for good cause. In support thereof, Nike and Eastbay state as follows:

1.  This is a products liability case concerning a pair of Nike athletic shoes that plaintiff Weiss was allegedly wearing while playing basketball on or about June 27, 2004. Plaintiff alleges that the Nike shoe was defectively designed and manufactured.

2.  Plaintiffs' counsel has possession of the shoes that are the subject of this litigation. However, Plaintiffs' counsel has refused, despite repeated requests, to send the shoes to one of defendants' experts, who is located in Tennessee, for non-destructive inspection and examination. Plaintiffs' counsel will not let the shoes out of sight or control.

3.  Plaintiffs have several experts, including an engineer who is located in New York. Plaintiffs' engineering expert has apparently been provided the subject shoes for his examination, and he has performed actual "testing" on the subject shoes, per his report.

4.  Plaintiffs have prejudiced defendants in their defense of this case by not allowing defendants' experts reasonable and adequate opportunity to inspect or examine the subject shoes.

WHEREFORE, Defendants respectfully request that this Honorable Court enter an Order directing that the subject shoes be sent via commercial delivery service to defendants' expert for non-destructive inspection and examination.

NIKE, INC. AND EASTBAY, INC.

By:  /s/ David D. Hudgins
Counsel

David D. Hudgins, Esquire (DC Bar # 362451)
Robert E. Draim, Esquire (admitted *pro hac vice*)
HUDGINS LAW FIRM, P.C.
515 King Street, Suite 400
Alexandria, Virginia 22314
(703) 739-3300 telephone
(703) 739-3700 facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of May 2008, a true copy of the foregoing was filed using the CM/ECF system which will send notification of such filing to the following:

Prabir Chakrabarty, Esquire
RESNICK & SCHWARTZMAN, L.L.C.
One East Franklin Street, Suite 200
Baltimore, Maryland 21202
pc@rs-atty.com

 /s/ David D.Hudgins
Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARNOLD B. WEISS, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:07-cv-1019 (RJL) |
| ) | |
| NIKE, INC., a/k/a NIKE USA, INC., et al., ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF
### MOTION TO COMPEL INSPECTION OF TANGIBLE OBJECT

Defendants, Nike, Inc., a/k/a Nike USA, Inc. ("Nike") and Eastbay, Inc. ("Eastbay"), by and through undersigned counsel, hereby file their Memorandum in Support of Motion to Compel Inspection of Tangible Object pursuant to Federal Rule of Civil Procedure 34 for good cause. In support thereof, defendants state as follows:

**I.      BACKGROUND AND FACTS**

Plaintiffs Weiss and Lattova have filed this products liability case, with multiple counts against Nike, Inc. and Eastbay, Inc., concerning a pair of Nike shoes. Included in the many counts are claims that the subject shoes had a manufacturing defect and a design defect. In particular, plaintiffs claim that the zipper on one of the shoes broke and that this somehow caused plaintiff Weiss's Achilles tendon to tear.

Plaintiffs have designated Mr. Carl Abraham, an engineer located in New York, as an expert witness. Per Mr. Abraham's report at paragraph 16, attached hereto as Exhibit A, he was provided the subject shoes for examination and physical testing. Presumably, the shoes were sent by plaintiffs' counsel to Mr. Abraham's New York office.

3

To counter plaintiffs' allegations, defendants have identified several experts, including Mr. Thomas Neal, an expert in shoe manufacturing and industrial engineering, who is located in Tennessee. Despite multiple requests, Plaintiffs, by counsel, have refused to send the shoes to Mr. Neal for non-destructive inspection and examination.

Although plaintiffs' expert Mr. Abraham states that he "physically tested" the subject shoes, Mr. Neal would only examine and inspect the shoes, i.e. visually, and would do nothing that might damage or impair the shoes. Nike and Eastbay even proposed that a protective order be entered that would specify the terms for delivery of the shoes and the terms for inspection. Despite these reasonable and protective terms, Plaintiffs' counsel has refused. Essentially, plaintiffs are making the task so onerous as to deny Nike and Eastbay's expert access to the shoes.

## II.  ARGUMENT

Federal Rule of Civil Procedure 34 expressly provides for production and inspection of tangible evidence: "A party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control . . . any designated tangible things." Fed. R. Civ. P. 34(1)(B). Defendants have requested production of the subject shoes; the only objection plaintiffs noted was that the title of the Request for Production did not include the term "thing", although the definitions and instructions include documents and things. As this case directly concerns the Nike shoes and whether there was any defect to the subject shoes, there is good cause for the inspection and the production of the shoes to defendants.

Plaintiffs Weiss and Lattova have only made the shoes available on a burdensome and unreasonable basis, causing needless expense to defendants. The simple, reasonable, and cost-efficient means for providing access to the subject shoes is for plaintiffs' counsel to send the shoes to the expert via commercial delivery service. These are shoes that can be easily delivered to the expert at a reasonable cost, rather than defendants' expert being required to travel from Tennessee to Baltimore at a much greater cost.

This particular issue has apparently not been the frequent subject of court opinions, as most often the matter is likely resolved among the parties and the product is typically shipped from expert to expert. Defendants Nike and Eastbay have attempted to resolve this issue, but plaintiffs will not budge and insist upon levying the burden and costs upon defendants and their experts.

In the case of Olexa v. Jacobs, 829 N.Y.S.2d 564, 565 (N.Y. App. Div. 2007), the appellate court held that the trial court erred in that its discovery order that was too restrictive upon the defendants' ability to have access to original evidence. At issue were original mammograms that were "crucial" to the defense of the medical malpractice case against the radiologists. Id. at 565. The appellate court ruled that provision of the original mammograms to defendants for only 72 hours each was far too restrictive and limited the defendants' "time and opportunity to review the original mammograms." Id. On appeal, the court held that plaintiff had "to turn over the original mammograms to the [defendants] for two periods of 10 consecutive business days." Id.

In an older case that was decided prior to the enactment of the rules of discovery, the appellate court reversed a judgment in favor of plaintiff who had refused to produce a

5

product to defendant. Driver v. F.W. Woolworth Co., 16 N.E.2d 548 (Ohio App. 1938).[1] That case involved a plaintiff who purchased a tube of mascara, and she claimed injury after application of the product due to alleged harmful ingredients in the mascara. Id. at 548-49. The trial court entered judgment in favor of plaintiff, and defendant appealed.

The issue before the appellate court was whether the trial court correctly ruled on the defendant's petition for discovery. Id. at 549. Defendant's counsel propounded requests to ascertain the ingredients of the mascara, and requested production of the tube of mascara to defendant or that plaintiff have the tube of mascara analyzed by a reputable chemist. Id. Plaintiff refused to permit the tube to be delivered to defendant for analysis and inspection by defendant's expert and did not have a chemical analysis performed on the mascara. Id. at 549-50.

Citing Wigmore on Evidence (2d ed.) 653, Section 2194, the Driver court stated:

> If a person, by virtue of his very existence in civilized society, owes a duty to the community to disclose for the purpose of justice all that is in his control which can serve the ascertainment of the truth, this duty includes equally the mental impressions preserved in his brain, the documents preserved in his hands, the corporal facts existing on his body, and the chattels and premises within his control. There can be no discrimination. The latter forms of disclosure, though more rarely asked for, are not a whit the less necessary or proper. They are included in the general duty.

Driver, 16 N.E.2d at 552. The Court found that the contents of the mascara were "exceedingly important" and held that the mascara tube (or some portion of the contents) should have been provided to defendants for examination and analysis. Id. at 551. The

---

[1] The case has been superseded by the enactment of rules of discovery, but has been cited for the common law principles of discovery.

6

Court held that the failure to permit the discovery was prejudicial error. Id. The judgment for plaintiff was reversed and the case was remanded. Id. at 552.

Similarly, the present case concerns tangible objects that are essential to the matters at issue. The shoes are, and can be, easily and quickly transported via commercial delivery service for inspection by defendants. We are not dealing with real property that obviously has to be inspected *in situ*. In fact, according to plaintiff Weiss, he even purchased the shoes online from defendant Eastbay, and the shoes were delivered to his doorstep within days. Defendants request that the shoes be shipped by a carrier that provides tracking for packages, and request that the plaintiffs wrap the package as they wish and ship the shoes via a carrier they choose. Defendants request that Mr. Neal be given two business days, after receipt of the shoes, for his inspection and examination.

### III.   CONCLUSION

WHEREFORE, Defendants Nike and Eastbay respectfully request that this Honorable Court enter an Order compelling Plaintiffs Weiss and Lattova to send the subject shoes to defendants' expert, Mr. Thomas Neal, via commercial delivery service, that Mr. Neal be given two business days after receipt of the shoes for non-destructive inspection and examination, and that the shoes be packaged and shipped by plaintiffs via a carrier of plaintiffs' choice, and that the shoes be returned by Mr. Neal to plaintiffs' counsel by the same carrier. Alternatively, in light of plaintiffs' unreasonable refusal to provide critical discovery, Nike and Eastbay request that the plaintiffs' claims be dismissed.

                                        NIKE, INC. AND EASTBAY, INC.


                           By:     /s/ David D. Hudgins
                                            Counsel

David D. Hudgins, Esquire (DC Bar # 362451)
Robert E. Draim, Esquire (admitted *pro hac vice*)
HUDGINS LAW FIRM, P.C.
515 King Street, Suite 400
Alexandria, Virginia 22314
(703) 739-3300 telephone
(703) 739-3700 facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of May 2008, a true copy of the foregoing was filed using the CM/ECF system which will send notification of such filing to the following:

    Prabir Chakrabarty, Esquire
    RESNICK & SCHWARTZMAN, L.L.C.
    One East Franklin Street, Suite 200
    Baltimore, Maryland 21202
    pc@rs-atty.com

                                              /s/ David D.Hudgins
                                              Counsel

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARNOLD B. WEISS, et. al.    )
                            )
        Plaintiffs,         )
                            )
    v.                      )    Civil Case No. 07cv1019
                            )
NIKE, INC., et. al.         )
                            )
        Defendants.         )

---

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NASSAU      )

BEFORE ME, the undersigned authority, a Notary Public, duly commissioned and qualified within the aforesaid State and County, personally came and appeared Dr. Carl J. Abraham, who after being duly sworn did depose and say:

1. My name is Carl J. Abraham, and my address is 3 Baker Hill Road, Great Neck, New York 11023. I am presently the Director of Scientific Advisory Services, Ltd. (hereinafter "SAS"), an entity that consults internationally to corporations, the legal profession, and government agencies in the areas of safety, safety engineering and design, new product development, OSHA, industrial hygiene, manufacturing, warnings and instructions, quality control, products liability and personal injury. I have a Bachelor of Arts degree in chemistry and mathematics, Masters Degree in physical – organic chemistry, and a Doctorate in organic chemistry. I am a licensed Professional Engineer, Certified Professional Chemist and Chemical Engineer, Fellow and Charted Chemist in the Royal Institute of Chemistry (London, England), Diplomate in the American Academy of Environmental Engineers, Fellow in the Textile Institute (Manchester, England), Certified in Arson Detection (Bureau of Alcohol, Tobacco and Firearms, U. S. Dept. of the Treasury), Diplomate of the American Board of Forensic Engineering & Technology, Juris Doctorate, and a Doctorate in Science in Administrative Management. I have taught chemistry, physics, and chemical engineering at the college level in the United States and presented lectures at universities in England. In addition, I have published papers in many areas including, but not limited to, safety, product safety, warnings and instructions. I have also created and patented many products that are used and sold internationally. In the past, I have consulted to CBS and ABC News on flammable household products, defective design of products and activities, and the causes of accidents and injuries associated with the respective products and/or activities; the Department of Agriculture and to the National Highway and Traffic Safety Administration. I have been a United States delegate to the International

1



Standards Organization (ISO), which creates safety standards. In my capacity in the ISO, I contributed to the safety standards, warnings and instructions to hockey and facilities throughout the world and presently, to toy manufacturing and safety. I have copyright registrations in the areas of battery warnings and instructions, toxic materials, household products and insect repellents. I have also consulted to various municipalities regarding the safety and design of their recreational facilities; as well as Set Makers, the original creator and manufacturer of the recreational facilities for McDonalds and Burger King; Lobster, Inc., the creator and manufacturer of tennis balls and pitching machines; Intamin, the largest manufacturer of roller coasters in the world; CBS, ABC, Eye Witness News (NY & Miami); and OSHA in the area of safety, safety engineering and design. I have been a member of ASTM from 1964 to the present time, and a former member of the Advisory Board on Industrial, Technical and High Performance Textiles in Manchester, England. At the present time, I am a member and consultant to the Safety & Protective Equipment Committee (SPEC) of USA Hockey, a former member (20 years) of the executive committee and of the Hockey Equipment Council. I am also a Diplomate in the American Board of Forensic Examiners in Sports Safety and consultant to OSHA in the area of safety.

2. Prior to the above positions, I was the founder and CEO of Inter-City Testing & Consulting Corp., a national company from 1970 to 1998. In that capacity I directed the consulting, testing, reconstruction and evaluation of a variety of personal injury accidents (over 5,000) and over 1000 product liability cases including many that also involved shoe safety.

3. After 1963, I was the Material Specialist for J. P. Stevens & Co. at their corporate research center. At that time, they were the second largest textile company in the world where I developed high temperature insulation materials that was eventually used in missiles. I was also responsible for setting up the protocol for the safety and welfare of the employees in my area of supervision.

4. In the recreational and park areas, I have been qualified as a specialist in recreational and playground cases and related fields in many courts throughout the United States, Canada and The Caribbean Islands. I am also a Former Director of Sports, Recreation & the Athletics Division of a national consulting firm for twenty-eight years. For over 30 years, I have been directly involved with sports & recreation safety standards, safety and design analysis of protective equipment, consumer products, warnings and instructions. I have consulted to municipalities on park & recreation facilities, and Set Makers, Inc., the manufacturer of recreation facilities for Burger King and McDonald's restaurants. I was also the consultant and expert on the case that changed all of the recreational facilities in

McDonald's and Burger King from the open type recreational facility to the completely enclosed type worldwide.

5. I was formerly a member of the Executive Committee and consultant in the area of engineering and human factors to the Hockey Equipment Certification Council (HECC) for 22 years and a U.S. Delegate-International Standards Organization (ISO) from 1988-2002. I am also a member and consultant to the Safety & Protective Equipment Committee (SPEC) of USA Hockey; inventor of the Bio-Lite football facemask licensed to Riddell; creator of warnings and instructions for many sports products; USPTA-certified tennis instructor (United States Professional Tennis Association); and a Diplomate-American Board of Forensic Examiners in Recreational Safety.

6. I have also created warnings and instructions on a variety of products that are used throughout the world.

7. I have also evaluated hundreds of products manufactured in the United States over the thirty plus years. I am a consultant to OSHA in safety and hazardous products and a last consultant to the retail food stores in the state of New York in the area of slip and fall accidents. In addition, the undersigned has presented OSHA safety sessions to employees of the New York Transit System, the Long Island Railroad and the Queensborough Tunnel Authority in New York. The meetings also included the use of ladders, including when and how to use them, setting-up, mounting, ascending, descending, and dismounting ladders the as well as the safe use of scaffolds while handling hazardous products.

8. I have also worked with various health departments and retail stores in Europe, the Far East, China, and throughout the United States in the use, application, safety, testing and the merchandising of toxic, hazardous and non-toxic products as well as the packaging, handling, merchandising, packaging and shipping of products throughout the world.

9. In 1995, I was personally responsible for setting up a manufacturing plant in China. The plant produced insect repellent products that I invented. I developed testing protocols to insure that the product was safe and created warning labels in accordance with United States and international standards. I traveled to China and located a site; oversaw its construction; obtained machinery to manufacture the products; secured suppliers of materials in China; secured and oversaw labor, materials, production, and shipping; monitored accounting and oversaw pricing; obtained purchasers for the finished products, including large retailers throughout the United States, Europe, India, South Korea, the Philippines and Japan; secured manufacturing representatives to sell the products and shippers to transport the product to the United States;

worked with the retail stores selling the products; and a host of other responsibilities that go along with being a manufacturer. I spent approximately two years overseeing this project. During that time, I became familiar with labor, material, production and shipping cost as well as the final end cost for producing a variety of products in China and shipping and selling them to retail stores in the United States as well as the safety protocol followed by said retail stores.

10. This affidavit is based upon the extensive experience of the undersigned in safety, safety engineering and design, warnings and instructions, manufacturing protocol, manufacturing costs, retail safety and protocol. My curriculum vitae is annexed herein as Exhibit A, and made part of this affidavit.

13. The opinions I provide in this affidavit are based on the documents that I have reviewed and referenced; the tests that I performed on the actual and exemplar shoes; my educational background, including science, physics, mathematics, chemistry, and forensic investigation; and my extensive experience in new product development, safety standards, safety design, safety engineering, human factors analysis, safety analysis, forensic investigations, safety warnings and instructions, packaging, manufacturing, retailers, safety consulting, and products liability; and over thirty years of experience in recreational and amusement park safety. In addition, I have created and performed testing protocols in the evaluation, testing and risk analysis of a large variety of products that has also been recognized and used by my consultation to City Lights Television a company that makes documentaries for the Discovery Channel. I have also performed risk analysis and the reconstruction of accidents for The Home Depot chain, the Hudson Bay stores in Canada and Penney's. Through my consulting for the chain stores, I have also been involved with the standard of care and the protocol of management in the selection and selling of their products.

14. I have been retained by the Plaintiffs in the above-styled case to render an opinion within a reasonable degree of certainty, whether the defendants were liable for the injuries complained of and to determine and document the causal relationship between the injuries complained of and the liability of the defendants.

15. The undersigned has reviewed the following materials and evidence with reference to the above captioned case. They included, but were not limited to, the following:
    1. Complaint.
    2. Defendants, Eastbay's and Nike's Answers to Interrogatories.
    3. Defendants, Eastbay's and Nike's Responses to Plaintiff's Request for Production of Documents.
    4. Subject Shoes.

4

5. Medical Records from Orthopedist, Steven K. Neufeld MD.
6. Medical Records from Physiotherapy Associates.
7. Medical Records from Advanced Sports Medicine and Wellness Institute.
8. Photographs of Mr. Weiss' feet.
9. Yates Field House Accident Report.
10. Georgetown University Incident Report.

16. In addition to the above, the undersigned inspected and physically tested the subject shoes and an exemplar pair of the same shoes on a size 9 and 1/2 foot.

17. Mr. Weiss didn't wear the shoes to the gym. He had another pair and put the Nikes on in the gym. This was the first time he used the Nike shoes.

18. Mr. Weiss was playing a casual game of 3 on 3, half court basketball on Sunday morning at about 11 A.M. He was not running hard, was not being pushed or grabbed and nobody was even around him when the incident occurred. At the time of the incident, he planted his foot and it felt like somebody had "given him a flat." In other words, he planted the right foot and the back of his foot moved up but not out of the shoe. The zipper failed to hold the foot in place because it opened up and failed. Mr. Weiss immediately experienced great pain and was eventually taken to the hospital. He was 35-years old at the time of the incident and suffered a rupture to his Achilles tendon that required to undergo surgical intervention. It was the first time that he wore and used the shoes. In fact, he changed his street shoes into the Nike shoes just prior to the incident.

19. The Achilles tendon, or tendon calcaneus, is a large ropelike band of fibrous tissue in the back of the ankle that connects the powerful calf muscles to the heel bone (calcaneus). Sometimes called the heel cord, it is the largest tendon in the human body. When the calf muscles contract, the Achilles tendon is tightened, pulling the heel. This allows one to point their foot and stand on tiptoe. It is vital to such activities as walking, running, and jumping. A complete tear through the tendon, which usually occurs about 2 inches above the heel bone, is called an Achilles tendon rupture.

20. In the subject matter, the sneakers were defectively manufactured, defectively tested, defective quality control testing prior to placing the shoes in the stream of commerce. In addition, the warnings and instructions were also defective.

21. The fact that the zipper failed under ordinary and foreseeable use means that either the specifications were not adequate or the zipper was defectively manufactured and/or affixed to the body of the shoe during the manufacturing process. More likely than not, it was defectively manufactured prior to placing it on the shoe and was not properly inspected.

5

Once the zipper failed, Mr. Weiss severely injured his and tore his Achilles tendon.

22. The fact that there were no warnings or instructions relating to the zipper failing and contributing to traumatic injuries also documents the fact that Nike's warnings were defective. Mr. Weiss was exposed to a hidden danger that was known or should have been known to Nike but not known to Mr. Weiss.

23. The risk of Mr. Weiss' injury could be minimized and/or eliminated if Nike specified that strength of the zipper to be 2.5 times the foreseeable force applied to that area when in use. If their design specifications state that is what they required for the shoe then the zipper failure was a manufacturing defect and the inspection of the shoe prior to sending it out in the stream of commerce was also defective act.

24. In summary, it is the opinion of the undersigned, with a reasonable degree of scientific certainty, that defendants did contribute to the injuries received by Mr. Weiss' traumatic injury for all of the reasons stated above.

25. The undersigned reserves the right to review additional documents obtained through discovery in order to have the opportunity to add to my analysis and change or modify my opinions.

Very truly yours,

Dr. C.J. Abraham

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF NEW YORK THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED THIS 28TH DAY OF MARCH 2008 AT GREAT NECK, NEW YORK.

DR. C. J. ABRAHAM

SWORN TO BEFORE ME THIS 28TH DAY OF MARCH 2008

SHARON G. BICKLER
No. 30-4753797
Qualified in Nassau County
Cert. filed in Westchester County
Commission Expires Nov. 30, 2009
NOTARY PUBLIC

DR. C. J. ABRAHAM
cjabraham1@aol.com
www.scientificadvisory.com

### EDUCATION & CERTIFICATIONS
- P. E.-Licensed Professional Engineer (Safety Engineering)
- CPC, CChE-Certified Professional Chemist & Chem. Engineer (National Inst. of Chemists & Chemical Engineers)
- FRSC, CChem-Chartered Chemist and Fellow (Royal Institute of Chemistry, London, England)
- DEE, IH-Diplomate, American Academy of Environmental Engineers, Industrial Hygiene Engineer
- FTI, Ctext-Fellow, The Textile Institute (Manchester, England)
- Certified -Arson Detection by the Federal Bureau of Alcohol, Tobacco and Firearms (U.S. Dept. of the Treasury)
- Certified-Chemical Engineer #0118-003-3, The American Institute of Chemical Engineers
- Certified in Warnings & Instructions
- BCFE -Board Certified Forensic Examiner
- Fellow-American College of Forensic Examiners
- Diplomate of the American Board of Forensic Engineering & Technology
- MS (physical organic chemistry)
- Ph.D. (organic chemistry)
- D.Sc. (Administrative Management)
- Juris Doctorate
- Permanent Certification, University of the State of New York- Chem., Physics, Math, Gen. Science

### AREAS OF EXPERTISE (Technical)
- Experience in new product development, manufacturing, packaging, standards, warnings and instructions.
- Extensive experience in the identification, elimination and control of hazards to people and property. This includes the development, establishment, manufacturing, construction, assembly, testing, operation, training and procedures including manuals, environmental engineering and industrial hygiene, warnings & instructions for consumer products.
- Authority in the fields of products liability, OSHA, Labor Law, safety and safety engineering and construction accidents.
- Contributing author to the PRODUCT DEFECT HANDBOOK.
- Lectured and taught at various universities in the United States and Europe.
- Published papers in the areas of fires, explosions (gas, bottle, battery), plastics, toxic torts, flammable fabrics, safety engineering and design, sports safety, household and industrial product safety.
- Patentee of many products, including protective headgear (face mask used in football - licensed to Riddell), enhancement of energy absorption for protective headgear and equipment, safety shields for batteries, insulation materials used on missiles, household products, and non-toxic insect repellents worldwide. Copyright Registrations in the areas of battery warnings and instructions, toxic materials, household products and insect repellents.
- Experienced in animal and human health products, new product development, EPA, product data specifications, testing and analysis.

7

- Member (former) of the Advisory Board - World Congress on Industrial, Technical, and High Performance Textiles (Great Britain); former member of the Advisory Board - American Board of Engineering and Technology (USA).
- Member, Architectural Review Board, Village of Great Neck, Great Neck, NY.
- Member-ISO/TC 181/SC: Safety of Toys.
- Member of the ASTM, (1964-present).
- Over 81 publications and presentations.
- Patentee of products produced and used throughout the world (over 38).
- Consulted to ABC and CBS News, Eye Witness News and the Discovery Channel.
- Consulted to the Department of Agriculture (Bureau of Mines).
- Consulted to the National Highway Traffic Safety Administration (NHTSA).
- Consulted to the Department of Labor (OSHA).
- Consulted to construction companies in the area of safety for their employees applying OSHA and ANSI standards for high elevations;
- Consultant on Warnings & Instructions to the Unified Abrasives Manufacturer's Association.
- Consulted to Hudson Bay stores, Canada in risk assessment and human factors.
- Consulted to Home Depot in risk assessment and human factors.
- Consulted to the American Textile Company (warnings & instructions).
- Consulted to Estwing Manufacturing Co. (warnings and instructions).
- Consulted to Sherman Williams;
- Consulted to The Thompson's Company-Water Seal Product
- Consulted to the Long Island railroad;
- Consulted to the New York Transit;
- Consulted to the Queensborough Bridge authority.
- Consultant to the estates of the deceased and the foreigners that escaped in the Kaprun fire disaster case in Kaprun, Austria.

## PROFESSIONAL EXPERIENCE (Sports & Recreation)

- Former Director of Sports, Recreation & the Athletics Division of a national consulting firm for twenty-eight years.
- Experienced in the identification, elimination, and control of hazards in recreation facilities, parks and school environments.
- Directly involved with sports & recreation safety standards, safety and design analysis of protective equipment, consumer products, warnings and instructions.
- Consulted to municipalities on park & recreation facilities, and Set Makers, Inc., the manufacturer of recreation facilities for Burger King and McDonald's restaurants.
- Member of the Executive Committee and consultant in the area of engineering and human factors to the Hockey -Equipment Certification Council (HECC) (1980-1998)
- U.S. Delegate-International Standards Organization (ISO) (1988-1998)
- Member Safety & Protective Equipment Committee (SPEC) of USA Hockey
- Inventor of the Bio-Lite football facemask licensed to Riddell
- Inventor of the ForceField Headband (www.forcefieldheadbands.com)
- Creator of warnings and instructions for many sports products.
- Consulted to Lobster, Inc. on safety and warnings (High speed tennis machine)
- USPTA-certified tennis instructor (United States Professional Tennis Association)
- Diplomate-American Board of Forensic Examiners in Sports and Recreational Safety

FOR LIST OF PUBLICATIONS AND PATENTS REFER TO
WWW.SCIENTIFICADVISORY.COM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARNOLD B. WEISS, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:07-cv-1019 (RJL) |
| | ) |
| NIKE, INC., a/k/a NIKE USA, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

UPON CONSIDERATION of defendants Nike, Inc. and Eastbay, Inc.'s Motion to Compel Inspection of Tangible Object against plaintiffs Arnold Weiss and Silvia Lattova; and the submissions filed, along with the entire record herein; and [the lack of] any opposition to the motion; it is hereby

ORDERED that defendants' Motion to Compel Inspection is GRANTED; and it is further

ORDERED that plaintiffs Weiss and Lattova shall ship the subject Nike shoes to Thomas Neal for delivery upon a date agreeable to Mr. Neal, that plaintiffs shall choose a commercial delivery service for shipping the shoes, that such commercial delivery service must have a system for tracking of packages, that plaintiffs shall package the shoes as they deem fit, that Mr. Neal shall be given two business days from receipt of the shoes to perform non-destructive inspection and examination, and that Mr. Neal shall return the subject shoes to plaintiffs' counsel via the same commercial delivery service.

SO ORDERED.

                                                                                                            _____
                                                                                                             Honorable Richard J. Leon,
                                                                                                             United States District Judge

cc:

David D. Hudgins (D.C. Bar # 362451)
Robert E. Draim (admitted *pro hac vice*)
Hudgins Law Firm, P.C.
515 King Street, Suite 400
Alexandria, VA 22314

Prabir Chakrabarty, Esq. (Fed. Bar #25524)
Resnick & Schwartzman, L.L.C.
One East Franklin Street, Suite 200
Baltimore, Maryland 21202